Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open and calling to law. God save the United States and His Honorable Court. Morning. Morning. We have four appeals to hear this morning. The first is United States v. Nunez. We're familiar with your cases. We've of the record. So, counsel, you should feel free to go straight to the heart of your argument. Anything that you're unable to say, though, that was raised in the briefs will, of course, be preserved. Do be mindful of the clock. If time expires and you're answering a question from the court, feel free to finish your answer, but do be mindful of our time as you do so. So, with Nunez, I believe we're going to hear first from Ms. Rogers. Is that right? That's right, Judge. Good morning, and may it please the Court. I'm Kristen Rogers from the Federal Defender's Office in Mobile, and I represent Angel Castro-Garcia in this case, which involves the prosecution under the Maritime Drug Law Enforcement Act. My colleagues and I have agreed that I will argue the substantive jurisdictional issue for the three defendants participating in oral argument today. Our claim is that the government did not demonstrate that the defendant's vessel, a YOLA that embarked from and was intercepted off of the coast of the Dominican Republic, was a vessel subject to the jurisdiction of the United States. The government argued that the YOLA was a vessel without nationality and relied on a provision of the Act which defines a stateless vessel as a vessel aboard which the master or individual in charge fails on request of an officer of the United States to make a claim of nationality or registry for the vessel. But that section does not support jurisdiction in this case, and our argument to that effect has two components. First, the four defendants who were aboard the YOLA took turns operating and being the individual in charge of the vessel. As a result, any one of those individuals could have a claim of nationality or registry for this vessel. Well, Ms. Rogers, am I right that when the vessel was boarded, the officers asked who was the master or who was in charge? That's correct. And no one had responded. None of the members of the crew said, that's me, right? The officer asked, and he stated this a couple of different ways. In his narrative, he said, I was unable to determine who the master of the vessel was. I asked who was driving and in charge of the vessel. And then at trial, he stated a little differently. I had asked who the master who was in charge. No one replied. So I said, who was driving the boat? And they said, we all took turns driving the boat. And our position is that when there's no one on board who is specifically designated to be the master or the captain, then whoever is operating the boat is the individual in charge of that vessel. What tells us that? Well, we relied on the Garrow case, which is an unpublished case from the circuit that discusses who the individual in charge is a little bit. That's a peculiar case, though, because as I understand it, in that case, the officers did not ask who was in charge. And the panel faulted the officers for not having done that. But whereas here, the officer did ask who was in charge and who was the master. That's correct. Garrow is distinguishable from this case in a couple of ways. But the court did state that the individual in charge was a person separate from the master. And they discussed a little bit what that term individual in charge means. And they relied on a case from the Seventh Circuit called Gaffney, which stated that, you know, just the plain meaning of the term individual in charge is the person who's operating the vessel. And I think also in this case, Officer Cordova, his own testimony supports the conclusion that he thought the person driving the vessel was the individual in charge of the vessel, just because of the way that he asked these questions. Because he said, I asked who was driving and in charge of the vessel. That's what his narrative says. And when he asked who was the master who was in charge, when no one answered, perhaps because they didn't understand the question, he immediately said, who was driving the boat? And one of the individuals said, we took turns driving the boat. Which would suggest no one was in charge. I think it would suggest that any one of those four defendants could make a claim of nationality for the vessel, because each of them had been in charge of the vessel. Now, the second component of our argument that this statutory provision does not support jurisdiction, is that the statute, consistent with international law, places the burden on the boarding officers to affirmatively request a claim of nationality or registry. But the Coast Guard officers who boarded the Yola in this case, did not ask the defendants, either collectively or individually, if they wish to do so. The government has a fallback argument in this case. They've said that the totality of the circumstances here supported a finding of statelessness. Our argument in response to that is that even if there's room in the definition of vessel without nationality in the statute, in section D1 of the statute, for other categories of stateless vessels, such as genuinely stateless vessels under international law, the government's argument that sort of unstructured weighing of the totality of the circumstances can establish statelessness is too broad. Miss Rogers, what do you make of this? There's something odd about the definitional section here. As I read it, it says that a vessel without nationality includes, and then it has three different provisions. But the term includes ordinarily, it provides examples, not an exhaustive list. And it's a real contrast then with the later provision, subsection E, which says includes only, which I would read very differently. What do you say about that? I don't disagree with the government's interpretation of that language. I just don't think it's particularly relevant in this case. The courts that have held that that's a non-exhaustive list have held that there's a catch-all category captured by section D1, that includes vessels that are stateless vessels under international law, under international law. So what's your argument about why this vessel was not stateless under international law, supposing that that does get swept in? Well, there are two cases that I think are highly relevant to that question. First is the Matos-Lucci case, and the second is the Rossero case. Both of those cases are discussed at length in the Garrow decision, both by the majority and the dissent, and I think when you look at those cases which discuss international law in depth, they reveal that statelessness under international law does not depend on the circumstances in which a vessel was encountered. So a vessel can have all the indicia of statelessness, but still not be a claim of statelessness. Under international law, the burden remains on the boarding officers to ask questions of the crew members. Genuine statelessness under international law is actually incredibly difficult to prove. It puts the government in the position of having to prove a negative, and that's why the statute is written the way it is. Congress actually made the government's in which a vessel will be deemed stateless under the statute. I see that I'm almost out of time, so unless the court has an additional question, I'll reserve my time for rebuttal. Okay. Thank you, Ms. Rogers. Mr. Bradford. Good morning, and may it please the court. I would like to take just a few moments to argue the issue raised by one of the non-arguing counsel, and that is that the judge in this case should have performed a full evidentiary hearing to determine jurisdiction prior to trial. The statute requires that. It's not an element. When does it require that? I think it requires it for a couple of reasons. One, the statute itself says that it's a preliminary determination that needs to be made as a matter of law, but it stands to reason that it needs to be made, but one, because you could get a certification right from the secretary that would be conclusive, the statute says, for example. I think that's possible. I think there's an interplay with rule 1101 with that, and there are cases where a certification has been presented to a court, and it dispenses with the necessity of an evidentiary hearing. In this case, there was no certification. What the court relied on was hearsay statements by Coast Guard officers and some other anecdotal information maps presented by the government. I can understand where if the court had been presented with conflicting evidence, it might want to hold an evidentiary hearing to resolve the dispute, but that's not what happened here, right? Well, I think there is conflict as to whether or not the state, the vessel being stateless, whether there's evidence to show that, and that should have been sorted out as a matter of jurisdiction prior to the trial, because by not doing it that way, it presented to the jury evidence that they otherwise would not have heard jurisdictional evidence. I think that's one of the reasons why we do it beforehand is to keep that kind of important to note that the government in this case filed a motion in limine to prevent any questioning or comment as to jurisdiction, and I think they treated it as an evidentiary issue, which would not be consistent with the statute. Thank you, Mr. Bradford. Mr. Shields? Judge, just, and may it please the court, just to follow up on what Mr. Bradford was talking about, when you look at the record, it's pretty clear that the court never made a final determination as to the preliminary requirement that he was supposed to make. In fact, he even mentions during the course of the trial that he was making a preliminary finding and not a final finding, and that kind of goes to the point that Mr. Bradford was making, which is a preliminary, a pretrial hearing was held just to determine some pretrial motions that had been filed, and most specifically the government's motion in limine. So while the issue of a fact the, as to where the vehicle was, the vessel was located, was never allowed to even be discussed during the trial, and Judge Biberstadt mentioned that he was reserving judgment with regard to this issue, and then that it was never final, and there's, we sort of need some guidance from the court as to how we handle this requirement of the necessity of a preliminary determination, it seems that Judge Biberstadt made the determination that sort of this was just, he had, he was making a tentative finding of sort of like a probable cause. When we hear preliminary hearing, oftentimes we think is there probable cause, and it appears that the district judge was treating this as a mere preliminary hearing, probable cause, enough to let the case go forward, when in fact what he has to do is to have a hearing to make final determination that is necessary, and I don't see any other way to do that other than some evidentiary hearing, you know, to make that determination. What was the conflicting evidence that you think that the court would have and should have considered in an evidentiary hearing? Well, I don't know. It would be determinative of what else was there. They came in, the government came in and put in some hearsay statements and some nautical maps. I don't know what else, if anything, was there that the defendants could have presented, but effectively the judge said, you know, I'm not going to, I'm going to make a preliminary determination now, and I'm not going to make a final determination until a later date, and presumably he made that finding at some point when he let the case go to the jury. Okay, Mr. Shields, do you have anything further? Nothing further. Thank you, Judge. Thank you. Mr. Martin, good morning. Morning, Your Honor. May it please the court, I am George Martin and I represent the United States. The boat in this case was a vessel without nationality in every sense of that phrase. It was a homemade small skiff found 50 miles offshore, loaded with 181 kilograms of cocaine, copious amounts of fuel, and these four defendants. It flew no flag, it bore no insignia, it carried no documents, and no one claimed upon request to be the master or individual in charge. Where in the record does, is there any indication in the record that any officer asked for a claim of nationality? No, the officer did not ask for a claim of nationality for the vessel. It asked the defendants individually for their nationality, but not for the vessel. But so the officer asked whether anyone was the master or in charge of the vessel, is that right? Yes, he asked who was the master, who was in charge. That was his trial testimony. And in the absence of any response to that, did not seek to elicit any other information about a claim of nationality? That is correct, Your Honor. Now, Ms. Rogers says that international law required more. It would have required the officers to at least elicit that information from the crew. What do you say about that? I do not agree with that. I don't think international law requires the Coast Guard to ask the question. It requires the crew to speak up under the circumstances. The international law... Let's say an event, if one of the crew members had said, I'm the master, or I'm in charge, how would it work then? Would the officer then be obliged to ask that master or person in charge the nationality of the vessel? He would have been under international law and under the... Well, he would not have been obliged... He would have been obliged under the statute, under D-1B, to follow up with the master or the person reporting the nationality of the vessel. Under international law, does that requirement that you see in the statute supersede any lack of a requirement in international law? I believe it is more... I believe that under international law, it does not shift the burden to the Coast Guard to ask that question, that second question about nationality. You're saying that federal law requires that, even though international law doesn't? Is that what you're arguing? Yes. It is under D-1B, if there is a master or individual in charge identified, then the Coast Guard must ask that follow-up question about nationality. But you're saying that that's a requirement that's imposed by federal law that does not otherwise arise under international law. Is that right? It is not... No, that's not what I'm arguing. I'm arguing that international... It's our position that... I'm sorry, Judge. Mr. Martin, isn't the concern of the Convention on the High Seas, which is the international law, that you don't offend some other country by boarding a vessel that belongs to it? So when you have a vessel that gives no indication, no flag, say nothing on the stern, whatever, and it appears to be stateless, international law allows you to board. We're not talking about crimes or anything, just to board. And normally in international law, when you board a vessel, let's say it's a freighter, then the party boarding is concerned not to offend the country where the vessel's registered. That's why the dialogue takes place. Yes, Your Honor. It has nothing to do with the individuals on board. It has to do with the foreign nation. That's right. And that's the concern under international law. And that is also the concern under the MDLEA, is to respect the sovereignty of nations to... Because this statute was written against the backdrop of the Convention on the High Seas. Correct. Okay. One is we're talking about boarding. They surely had the power to board. Yes. And then the argument is that obviously it was stateless. There was no need to call a foreign ministry somewhere. I see why they want to claim the vote. Circumstances. And just to clear up what I may have confused in what our argument is, subsection E of the statute is consistent with international law in identifying the ways that a claim of nationality can be made. Right. And that includes flying a flag, having documents. Right. Producing documents. Right. Producing documents. And the master or individual in charge making a claim. Right. Yes. And international law is consistent with the statute in that it is only the master or individual in charge who can make a claim. Not a crew member, not a boat driver, but the master or individual in charge. And if there is no one who speaks up when the Coast Guard attempts to identify that person, then the burden is not on the Coast Guard to ask the follow-up question, either under international law or under D1B of the statute. Okay. That's our argument. Okay. And what we... The court can affirm jurisdiction in this case, either under D1B proper or under a totality of the circumstances analysis, because as you pointed out, Judge Pryor, the language that Congress used in D1 and E are different for a reason and should be given meaning. But we looked at E. What you're saying then, as I understand your argument is, you're saying we look really to E first. E says, these are the only ways that you can make a claim of nationality. Fly the flag, produce the documents, or the master or person in charge makes a claim. Yes, Your Honor. And if... The earlier subsection that identifies what can include a vessel without nationality specifies some rules of engagement, I guess, for the officer who boards a vessel and interacts with a master or person in charge, it may be that that person makes a claim of nationality that the foreign state denies or, as I understand it, just is equivocal about. In which case, that is a vessel without nationality, even though the master has made that claim of nationality, right? That's true. And that's under D1A and C of the statute. And B is different in an important respect in the language that Congress used in that subsection. While A and C requires, as you mentioned, affirmative action on the part of the master or individual in charge, subsection B is grounded in silence and inaction. It uses the word fails instead of some other more active verb like refuses. And that section of the statute can be met by failure on two levels. One, failure for the master or individual in charge to identify him or herself. And then, if he happens to do that, then a failure on the second level, which is to fail to make a claim of nationality. So the court can affirm jurisdiction in this case, either under D1B proper or under a totality of the circumstances analysis because D1 is a non-exclusive list. And the circumstances of this case show that this vessel was obviously stateless. What about an evidentiary hearing? Was the district court obliged to have an evidentiary hearing? And at what point did the district court really make a determination that it had subject matter jurisdiction? Well, to answer the last question first, he made it at the very last minute. He made it after charging the jury, but before giving the case to the jury, he made that final determination. And he made it then because he was being very careful to give the defendants the opportunity that they requested to, at some point, cross-examine the Coast Guard witnesses on the jurisdictional issue. The defendants never took advantage of that opportunity, even though it was left open by the judge. And that is part of the reason he made it preliminary ruling in the first place. He wanted to give the defendants that opportunity when the witnesses were in court under oath, but they never did it. They were silent. They never requested any, and the judge offered to do that outside the presence of the jury, but the defendants were silent and never took advantage of that opportunity. Under those circumstances, the court did not abuse its discretion by not holding a hearing. There was extensive briefing in the case. The United States submitted statements and documents proving jurisdiction. The evidence that trial that was admitted was consistent with that, supported the trial's court preliminary ruling on jurisdiction. And the defendants never, even today as I hear it, have offered contrary facts, jurisdictional facts to disprove the government's proof of jurisdiction. So under those circumstances, the district court did not abuse its discretion. And if a hearing was required, it was an error was committed. It was harmless in this circumstance for all the reasons I just stated. Just two points on a couple of the other issues. The defendants have argued that they were all during their five-hour voyage, they took the tiller and guided the direction of the boat for a time. But not all boat drivers are individuals in charge. A driver can be, but it is not necessarily so, as the defendants argue. The statute contemplates something more than brief control over the direction of a boat. The statute uses the term master and individual in charge. And the dictionary definition of master is someone who has authority over another person. And we know that through the rule of statutory interpretation that words in a list in a statute are known by the company they keep, that individual in charge is something different but akin to a master. And steering a boat for a brief period of time is not evidence that they were in control or in charge of the vessel. Instead, the evidence in this case shows that there was no person in charge. There was no hierarchy among the four defendants. No one claimed to be in charge. They all drove the boat for a period because of the difficulty of steering that boat in those seas. And the defendant who was driving the boat at the time of the Coast Guard intercepted the vessel, abandoned the helm and mixed in with the other four defendants, concealed himself and never identified himself as the individual in charge. Under these circumstances, all four of these defendants were not individuals in charge as the defendants claimed. To test their theory, let's assume that this was a larger boat with a larger 24-member crew. Under the defendant's theory, if each of those crew members drove the boat for an hour, then each of them would be individuals in charge. And that is not what the statute contemplates. It contemplates someone who was truly in charge and over... There was testimony by Martinez. Was this during the trial where there was at least testimony about a statement by Martinez that he was not in charge of the boat and laughed when asked if he was captain? Was that the officer who testified to that? And was that during the trial? Yes, Your Honor. The statements of the four defendants were offered during the trial. Martinez's statement was Exhibit No. 20. And none of the defendants in those statements claimed to be a boat driver or an individual in charge. I see that my time's up, and I thank the court for the time and ask that it affirm these convictions for the reasons stated. Okay. Thank you, Mr. Martin. Ms. Rogers, you have two minutes. Ms. Rogers, you're still muted. You need to unmute. Sorry, Judge. It's okay. I just have a few quick points. First of all, we obviously disagree with the government regarding what international law says about who has the burden to ask questions. Secondly, no court has adopted the government's broad totality of the circumstances argument. Justice Alito, when he was a judge on the Third Circuit, wrote the Rosero decision in which he specifically rejected that totality of the circumstances argument. And he did so because of the burden that international law places on the boarding officers to ask questions. Third, I'd like to acknowledge Judge Joe Flapp's dissent in Garrow because he's here. And note that there's an important factual distinction between this case and in Garrow, which made a huge difference, I think, in Judge Joe Flapp's reasoning in that dissent. And that was that in that case, the crew specifically said they had a master, but he had gone overboard, that there was a master who was no longer present, which is in stark contrast to this case where the individuals never denied, never claimed to have a master who was no longer present. And therefore, as we argue, because there was no master of this vessel, then the men who were driving the vessel were in charge of the vessel out of necessity. I mean, someone had to be in charge of the vessel, and they were the only four individuals who were on it. What should have happened in this case is, especially given that this boat had so many connections to the Republic through its normal State Department channels and gotten the jurisdiction certification. Is there anything in the statute that would require that kind of outreach from the Coast Guard to a foreign nation that no one has made a claim of registry for? No one made a claim because no one was asked in this case. Ordinarily, perhaps no, but here no one was asked the question, and so the government could have gotten that consent from the Dominican Republic at any point up to trial. So that's not a high burden for the government to meet. Any other questions? Thank you, Ms. Rogers. We understand your case, and I note that Mr. Bradford and Mr. Shields, you were both court appointed. Thank you for accepting the appointment and assisting us this morning.